## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

HAROLD MOSES COVERT                                    PLAINTIFF
ADC #151511

V.                            No. 4:20-CV-202-BSM-JTR

WENDY KELLEY,
Director, ADC, *et al.*                                DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.   Introduction

On February 26, 2020, Plaintiff Harold Moses Covert ("Covert"), a prisoner incarcerated in the Varner Supermax Unit ("VSM") of the Arkansas Division of Correction ("ADC"), filed a *pro se* § 1983 Complaint alleging that Defendants violated his constitutional rights. Specifically, Covert alleges that he made the

following Defendants aware that drugs were being smuggled into VSM, but they were deliberately indifferent to a substantial risk of harm to his safety by failing to investigate or take any action to correct the problem:

Wendy Kelley, ADC Director ("Kelley");

Dexter Payne, ADC Director ("Payne");

James Shipman, Deputy Warden ("Shipman");

Jared Byers, Deputy Warden ("Byers");

Brandon Carroll, Chief of Security ("Carroll");

Marshall Reed, Chief Deputy Director ("Reed");

Randy Straughn, Chief of Security ("Straughn");

James Plummer, Captain ("Plummer");

Scott Taylor, Captain ("Taylor");

Christopher Johnson, Deputy Warden ("Johnson");

Michael Richardson, Chief of Security/Captain ("Richardson");

Raymond Naylor, Internal Affairs Administrator ("Naylor"); and

James Gibson, Warden ("Gibson").

*Doc. 2 at 5–14.* He further alleges that, after he called the Arkansas State Crime information line to report prisoners selling drugs, Defendants Plummer, Lieutenant Mary Lloyd ("Lloyd"), Sergeant Laquita Swopes ("Swopes"), and Sergeant

Hampton ("Hampton") subjected him to a retaliatory cell search, in violation of his First Amendment rights. *Doc. 2 at 14–15*.

Defendants have filed a Motion for Partial Summary Judgment (*Doc. 55*), a Brief in Support (*Doc. 56*), and a Statement of Undisputed Facts (*Doc. 57*) arguing that all of Covert's *deliberate indifference* claims should be dismissed because he failed to exhaust his administrative remedies.[1] *Doc. 55; Doc. 56; Doc. 57.* Defendants attached to their Motion: (1) the relevant ADC Administrative Directives (*Doc. 55-1; Doc. 55-2; Doc. 55-3*); (2) the sworn Declaration of ADC Inmate Grievance Supervisor Terry Grigsby-Brown ("Grigsby-Brown") (*Doc. 55-4*); and Covert's relevant grievances (*Doc. 55-5; Doc. 55-6; Doc. 55-7; Doc. 55-8; Doc. 55-9; Doc. 55-10*).

Covert filed a Response to Defendants' Motion for Partial Summary Judgment (*Doc. 61*), a Brief in Support (*Doc. 62*), a Response to Defendants' Statement of Undisputed Facts (*Doc. 63*), and a Response to Grigsby-Brown's Affidavit (*Doc. 65*). Defendants have filed a Reply (*Doc. 70*). Thus, the issues are joined and ready for disposition.

---

[1] Defendants do not contend that Covert failed to exhaust his First Amendment retaliation claims against Plummer, Lloyd, Swopes, and Hampton.

## II.  Discussion

### A.    The PLRA's Mandatory Exhaustion Requirements

The PLRA requires prisoners to exhaust all available administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield,* 933 F.3d 993, 1000 (8th Cir. 2019).

The PLRA requires prisoners to: (1) *fully and properly* exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action; and (2) complete the exhaustion process *before* initiating the § 1983 action. *Covert,* 549 U.S. at 211, 219–20, 223–24; *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton,* 752 F.3d 1136, 1141–42 (8th Cir. 2014). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Covert,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, to satisfy the PLRA, Covert must comply with the exhaustion requirements of the incarcerating facility before he can properly file a § 1983 action.

The relevant ADC directives and regulations governing exhaustion require that, in connection with each claim, a prisoner must, among other things: (1) "specifically name each individual involved;" (2) *state only one problem or issue per grievance*; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See* ADC Adm. Dir. ("AD") 14-16 § IV(C)(4), (D)(2), & (E)(2); AD 19-20 § IV(C)(4), (D)(2), & (E)(2); and AD 19-34 § IV(C)(4), (D)(2), & (E)(2).[2]

The grievance forms themselves also contain these instructions to ensure prisoners are aware of them. *Id*. at Att. I ("Briefly state your *one* complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected."). If an ADC inmate wishes to grieve more than one issue, he or she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted." *Id*.[3] The ADC's policy cautions prisoners that, if they fail

---

[2] All grievances relevant to this claim were filed and resolved between April and December 2019. Accordingly, three different ADC Inmate Grievance Procedures were in effect during the relevant time period. *See* AD 14-16, effective April 11, 2014 through July 31, 2019; AD 19-20, effective August 1, 2019 through December 1, 2019; and AD 19-34, effective December 2, 2019 to present. *See Doc. 55-1; Doc. 55-2; Doc. 55-3*. Importantly, however, throughout the relevant time period, the exhaustion requirements applicable to Covert's grievances remained the same in all three of these Administrative Directives. *See id.*

[3] Covert alleges that AD 19-20 and AD 19-34 do *not* "state that additional issues will not be considered exhausted for litigation purposes." *Doc. 63 at 2, ¶ 10*. This contention is plainly contradicted by the record. *See Doc. 55-2 at 5 & Doc. 55-3 at 5*.

to "exhaust their administrative remedies *as to all defendants at all levels* of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance *before* filing a lawsuit).

The ADC's policy also contains measures to prevent inmates from "abusing" the grievance procedure. *Id.* at § IV(J). First, ADC inmates are generally limited to five Step One informal resolutions and three Step Two formal grievances per seven-day period. *Id.* at § IV(J)(1)(a)–(c). Exceptions are made only for emergency situations. *Id.* Second, if an inmate submits a Step Two "formal grievance [that] is a duplicate of one previously submitted…with regard to the staff member named, the date of the incident, and the subject of the grievance," it is rejected and returned to the inmate. *Id.* at § IV(J)(1)(d). Third, "[a] frivolous or vexatious submission at any step will be" rejected.[4] *Id.* at § IV(J)(2). Finally, grievances that contain threats or

---

[4] The ADC policy defines "frivolous" and "vexatious" submissions as follows:

A submission is frivolous when it is clearly insufficient on its face to allege an issue or concern and is readily recognizable as devoid of merit and insufficient for resolution or appeal.

A submission is vexatious when it merely agitates, provokes, harasses or irritates by petty provocation and is not designed to lead to any practical result, resolution, or appeal.

AD 14-16 § IV(J)(2)(b)–(c); AD 19-20 § IV(J)(2)(b)–(c); AD 19-34 § IV(J)(2)(b)–(c).

"false statement [made] for the purpose of harming another person" are rejected. *Id.* at § IV(J)(3)–(4).

Thus, Covert was required to fully and properly exhaust his deliberate indifference claim against each Defendant by raising and pursuing it through all three steps of the ADC's grievance process. *Id.* at §§ IV(D)–(G). This required him to file: (1) "Step One" informal resolutions within fifteen days of each incident which named each Defendant and explained their involvement in his complaint; (2) "Step Two" formal unit-level grievances raising that complaint with the Warden within three working days of the denial of the informal resolutions; and (3) "Step Three" appeals to the appropriate ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's Decision on each of his grievances. *Id.*

## III.  Covert's Grievances

Between April and November 2019, Covert submitted eight grievances that are arguably relevant to the claims he raises in this § 1983 action.[5] Before discussing the merits of Defendants' Motion for Partial Summary Judgment, it is important to

---

[5] In their Motion for Summary Judgment, Defendants identified *six* relevant grievances: VSM19-01224; VSM19-01225; VSM19-02628; VSM19-02762; VSM19-02766; VSM19-02767.

In his Response to Defendants' Motion for Summary Judgment, Covert identifies two other grievances he believes to be relevant: VSM19-01237 and VSM19-02971. Covert also attaches an unnumbered Step One informal resolution dated October 17, 2019, in which he complained that he was not receiving hair care services three times a week while in restrictive housing. *Doc. 61-1 at 73*. Because that unnumbered informal resolution is not relevant to this § 1983 action, it will not be addressed by the Court.

review those submissions, each of which was pursued through at least Step Two of the ADC's exhaustion process.[6]

### A.    VSM19-01224 (*Doc. 55-5*)

1.    On April 28, 2019, Covert filed two Step One informal resolutions.

2.    In his first April 28 informal resolution, Covert alleged that he saw a non-defendant ADC employee, "McCoy," give another VSM inmate drugs on March 9, 2019. Covert further claimed that McCoy offered him drugs on March 24, 2019. *Doc. 55-5 at 4*. Covert did *not* name or otherwise identify any of the Defendants in the informal resolution. *Id.*

3.    Because Covert did not receive a response to the April 28 informal resolution within three working days, he timely and properly proceeded to Step Two of the grievance procedure on May 2, 2019.[7] *Id.*

4.    At Step Two, the April 28 informal grievance became a formal grievance which was designated VSM19-01224 The ADC Inmate Grievance

---

[6] "In deciding a motion for summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion…so long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (cleaned up).

[7] *See* AD 14-16 § IV(E)(11) ("If the designated problem-solver…has failed to contact the inmate and attempt resolution of the complaint or failed to return Step One (the grievance) within the designated three working days, the inmate may proceed to Step 2, the formal grievance, without the completion of Step 1. In that instance, Step 2, the formal grievance, must be filed no later than six (6) working days from the submission of the [Step One informal resolution]: this allows three (3) working days to wait for a response to Step 1, and three (3) additional days to initiate Step 2.") *Doc. 55-1 at 7–8* (inconsistency between numerals and spelled-out numbers in the original).

Coordinator rejected grievance VSM19-01224 on procedural grounds because Covert's April 28 informal resolution was not filed within fifteen days of either the March 9 or March 24 incidents. *Doc. 55-5 at 3*.

5.    Covert appealed and, at Step Three, Defendant Payne upheld the rejection of the grievance as untimely. *Doc. 55-5 at 2–3*.

6.    The parties agree that, because the grievance was rejected as untimely, Covert cannot rely on VSM19-01224 to establish that he properly exhausted any of his claims. *Doc. 57 at 11, ¶ 31; Doc. 63 at 3, ¶ 31*.

**B.    VSM19-01225 (*Doc. 55-6*)**

7.    Covert's second April 28, 2019 informal resolution alleged that, on or about March 25, he reported to Defendants Shipman and Naylor, that methamphetamine was coming into VSM. *Doc. 55-6 at 6*. No other Defendants were named in this informal resolution. *Id.*

8.    After not receiving a response to his second April 28 informal resolution within three working days, Covert timely and properly proceeded to Step Two of the grievance procedure on May 2, 2019. *Id.*

9.    At Step Two, this informal resolution became a formal grievance which was designated VSM19-01225. The ADC Inmate Grievance Coordinator rejected VSM19-01225 on procedural grounds because it was filed more than fifteen days after the March 25 incident. *Doc. 55-6 at 5*.

10.    Covert appealed and, at Step Three, Defendant Payne upheld the rejection of the grievance as untimely. *Doc. 55-6 at 4–5*.

11.    The parties agree that, because the grievance was rejected as untimely, Covert cannot rely on VSM19-01225 to establish that he properly exhausted any of his claims. *Doc. 57 at 13, ¶ 37; Doc. 63 at 3, ¶ 37*.

### C.    VSM19-01237 (*Doc. 70-1*)

12.    On April 29, 2019, Covert submitted an informal grievance alleging that Defendants "Kelley, Payne, Major Gibson, Byers, Shipman, Carroll, [and] Straughn" were legally responsible for the ongoing problem of drugs being smuggled into VSM. *Doc. 70-1 at 2*. He specifically alleged that those Defendants "fail[ed] to protect a substantial risk of serious harm and…disregarded that risk by failing to take reasonable measure[s] to abate the deadly issue." *Id.* Other than Kelley, Payne, Gibson, Byers, Shipman, Carroll, and Straughn, Covert did not name any other Defendant in the informal resolution. *Id.*

13.    Given the quality of the copy, it is impossible to tell if Covert received a response to this informal resolution. Nevertheless, it is clear that, on May 3, 2019, Covert timely and properly proceeded to Step Two of the grievance procedure. *Id.*

14.     At Step Two, this informal resolution became a formal grievance and was designated VSM19-01237. On May 9, 2019, the "Warden/Supervisor or Designee"[8] gave the following reasons for denying this grievance:

> The purpose of the inmate grievance procedure is to solve complaint problems that may have merit. It is not meant to be used to make incoherent statements, pose-questions problems [sic] or make suggestions. If you have [a] specific incident that can be proved[,] you may submit it for review. Therefore, I find this issue without merit.

*Doc. 70-1 at 1*.

15.     Covert did *not* appeal the denial of VSM19-01237 to Step Three. Because he failed to fully exhaust his administrative remedies, Covert cannot rely on VSM19-01237 to establish that he properly exhausted his administrative remedies on any of his claims. *Id.*; *Doc. 70-2 at 6, ¶¶ 28–29*.

### D.     VSM19-02628 (*Doc. 55-7*)

16.     On October 1, 2019, Covert submitted an informal resolution alleging that he saw a non-defendant ADC employee, "SGT R. Jones," bring "skate and K-2" to the inmate in "cell 547." *Doc. 55-7 at 3*. Covert did *not* name or otherwise identify any of the Defendants in the informal resolution. *Id.*

---

[8] The signature is illegible.

17.    Because Covert did not receive a response to his October 1 informal resolution within three working days, he timely and properly proceeded to Step Two of the grievance procedure on October 8, 2019.[9] *Id.*

18.    At Step Two, this informal resolution became a formal grievance and was designated VSM19-02628. On October 14, 2019, the "Warden/Supervisor or Designee" gave the following reason for denying this grievance: "An investigation was conduct[ed] due to your allegations. Your allegations concerning Sgt. Jones were unfounded. Therefore, I find this issue without merit." *Doc. 55-7 at 2*.

19.    On November 1, 2019, the "Chief Deputy/Deputy/Assistant Director" denied Covert's Step Three Appeal: "After review of your appeal and supporting documentation, I find that I concur with the Warden's decision. Your appeal is without merit. Appeal denied." *Doc. 55-7 at 1*.

20.    The parties agree that Covert fully exhausted VSM19-02628. However, because that grievance did not name or otherwise identify *any of the Defendants* in this action, Covert concedes that he cannot rely on VSM19-02628 to establish that he properly exhausted his administrative remedies on any of his claims. *Doc. 57 at 15, ¶ 44; Doc. 63 at 3, ¶ 44*.

---

[9] *See* AD 19-20 § IV(E)(11). *Doc. 55-2 at 8*.

**E.    VSM19-02762 (*Doc. 55-8*)**

21.    On October 16, 2019, two days after VSM19-02628 was denied at Step Two, because Covert's "allegations concerning Sgt. Jones were unfounded," Covert submitted two more informal grievances, both of which sought to collaterally attack the still not yet fully exhausted Step Two decision on VSM19-02628.

22.    In his first October 16 informal resolution, Covert alleged that Defendants Gibson, Shipman, and Carroll failed to investigate his report that Sgt. Jones was bringing drugs into VSM. *Doc. 55-8 at 7*. Covert also alleged that, based on information provided to him by Defendant Plummer, another ADC employee must have provided Sgt. Jones with the drugs that were being introduced into VSM. Other than Defendants Gibson, Shipman, Carroll, and Plummer, Covert did *not* name or otherwise identify any of the other Defendants in the informal resolution. *Id.*

23.    No written response was given to Covert's Step One informal resolution, and, on October 21, he timely and properly proceeded to Step Two of the grievance procedure. *Id.*

24.    At Step Two, this informal resolution became a formal grievance, and was designated VSM19-02762. On October 27, Defendant Warden Gibson relied on procedural grounds to find that VSM19-02762 was "without merit": "This issue has already been addressed in Grievance VSM19-02628 and will not be addressed again

at this level…Therefore, I find this issue without merit." *Doc. 55-8 at 3, 5*. In other words, Warden Gibson rejected VSM19-02762 because it was a "duplicate" of VSM19-02628, *i.e.,* it sought to raise the *same claim* in a collateral attack on the investigation which the Step Two decision maker relied on to deny VSM19-02628.

25.    In his Step Three appeal, Covert stated: "This is an ongoing issue that will only continue with Sgt. Jones[.] These drugs kill people and prison officials ha[ve] a duty under the Eighth Amendment to ensure reasonable safety[.] Who can say that Sgt. R. Jones will not go and get poison and give it to a[n] inmate[?]"[10]

26.    At Step Three, Defendant Reed "concur[red] with the Warden's decision" to reject VSM19-02762 as a duplicate of VSM19-02628 and found the appeal to be without merit. *Doc. 55-8 at 3–4*.

27.    The parties dispute whether VSM19-02762 was properly rejected as being duplicative of the same claim Covert raised in VSM19-02628. *Doc. 57 at 15, ¶ 46; Doc. 63 at 3, ¶ 46*.

**F.    VSM19-02766 (*Doc. 55-9*)**

28.    In his second October 16 informal resolution, Covert restated the seriousness of his earlier allegations about "Sgt. Jones" and his conduct on October 1, 2019 and requested that "Major Carroll" save "the surveillance cameras and video

---

[10]  The language Covert uses in his Step Three appeal makes it crystal clear he is reasserting the same claim involving "Sgt. Jones" that he previously raised in VSM19-02628.

monitoring" that may have captured the October 1 incident. *Doc. 55-9 at 5.* Defendant Carroll is the only Defendant named or otherwise identified in this informal resolution. *Id.*

29.    No written response was given to this Step One informal resolution, and, on October 21, 2019, Covert timely and properly proceeded to Step Two of the grievance procedure. *Id.*

30.    At Step Two, this informal resolution became a formal grievance and was designated VSM19-02766. On October 22, 2019, ADC Inmate Grievance Coordinator Gloria Thompson rejected VSM19-02766 because it was a "duplicate" of VSM19-02628.

31.    The edges of Covert's Step Three handwritten appeal were not copied and small portions of his handwriting are not visible. Nevertheless, it is clear that Covert disputed Ms. Thompson's rejection of VSM19-02766 as a "duplicate." The following portion of Covert's Step Three appeal is legible:

> …way that this a duplicate of VSM19-02628 due to this is something
> that will prove how…R. Jones brought K-2 and skate into cellblock 5
> on 10-1-19 at or around 5:00pm. I am asking…the surveillance cameras
> and video monitoring be saved for a review of the…

*Doc. 55-9 at 4.*

32.    Defendant Reed denied Covert's Step Three appeal because VSM19-02766 was a duplicate of Covert's earlier grievance (VSM19-02628) raising the same claim against Sgt. Jones. *Doc. 55-9 at 3.*

15

33.     The parties dispute whether VSM19-02766 was properly rejected as a duplicate of VSM19-02628. *Doc. 57 at 17–18, ¶¶ 50, 53; Doc. 63 at 3–4, ¶¶ 46, 50, 53*.

### G.     VSM19-02767 (*Doc. 55-10*)

34.     On October 17, 2019, Covert submitted a Step One informal resolution alleging that Defendants Shipman, Naylor, and Carroll were aware of a so-called policy that allowed ADC employees to smuggle drugs into VSM via their hair, but they failed to do anything to correct the situation. *Doc. 55-10 at 6*.

35.     No written response was given to Covert's Step One informal resolution, and, on October 21, 2019, he timely and properly proceeded to Step Two of the grievance procedure. *Id.*

36.     At Step Two, this informal resolution became a formal grievance and was designated VSM19-02767. On October 22, 2019, ADC Inmate Grievance Coordinator Gloria Thompson rejected VSM19-02767 on procedural grounds because it asserted a complaint that was "frivolous and vexatious." *Doc. 55-10 at 2, 5–6*.

37.     In his Step Three Appeal, Covert maintained his assertions that "[t]he policy that deals with how employees hair is how employees are smuggling drugs into [VSM]….[T]his policy is unconstitutional under my Eighth Amendment [rights] under personal safety." *Doc. 55-10*.

38.     At Step Three, Defendant Reed concurred with the decision that, because VSM19-02767 raised matters that were "frivolous and vexatious," it should be denied. *Doc. 55-10 at 3–4*.

39.     The parties dispute whether VSM19-02767 was properly rejected as "frivolous and vexatious." *Doc. 57 at 18–19, ¶¶ 55–56; Doc. 63 at 4, ¶¶ 55–56*.

**H.     VSM19-02971 (*Doc. 61-1 at 67–71*)**

40.     On October 27, 2019, Covert submitted a Step One informal resolution, alleging that, after he provided information to the Arkansas State Crime information line regarding drugs being smuggled into VSM, "Captain J. Plummer, Lt. M. Lloyd, Sgt. Hampton, [and] Sgt. Swopes" retaliated against him by searching his cell for contraband. *Doc. 61-1 at 67*. No other Defendants are named in this informal resolution.

41.     Because Covert did not receive a response to his October 27 informal resolution within three working days, he proceeded to Step Two of the grievance procedure on November 6, 2019.[11] *Id.*

---

[11]     It appears Covert's Step Two grievance was filed more than six working days after he filed his Step One informal resolution. However, Defendants waived any right to raise Covert's untimeliness as a defense because the Step Two and Step Three decision makers did not raise that issue and denied Covert's formal grievance and Step Three appeal on the merits. *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("[T]he PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits.").

42.    At Step Two, this informal resolution became a formal grievance and was designated VSM19-02971. On November 12, 2019, the "Warden/Supervisor or Designee" found VSM19-02971 to be without merit: "Searches of inmates are conducted as often as necessary to control contraband, but never for the purposes of punishment or harassment. You have not provided any evidence to support your allegations of retaliation. Therefore[,] I find no merit to this complaint." *Doc. 61-1 at 68*.

43.    At Step Three, Defendant Reed "concur[red] with the Warden's decision" and found Covert's appeal to be without merit. *Id.* Thus, based on the record, Covert fully and properly exhausted his administrative remedies on the retaliation claim he has asserted against Defendants Plummer, Lloyd, Hampton, and Swopes.

## IV.  Discussion

In their Motion for Partial Summary Judgment and Reply, Defendants argue that, while filing seven grievances related to his "failure to investigate/deliberate indifference claim" against them, he did not *fully and properly* exhaust his administrative remedies on that claim against any of the Defendants.

In his Response, Covert argues that he exhausted his deliberate indifference claims against: (1) Gibson, Shipman, and Carroll in VSM19-02762 (*Doc. 57 at 16, 19, ¶¶ 48, 58*; *Doc. 63 at 4–5, ¶¶ 48, 58; Doc. 62 at 8*); (2) Carroll in VSM19-02766

(*Doc. 57 at 18, ¶ 53; Doc. 63 at 4, ¶ 53; Doc. 62 at 9–10*); and (3) Shipman, Carroll, and Naylor in VSM19-02767 (*Doc. 62 at 9, 12*).[12]

For the reasons set forth below, the Court recommends that Defendants' Motion for Partial Summary Judgment (*Doc. 55*) be granted.[13]

### A.    Covert Did Not Exhaust His Administrative Remedies Against Kelley, Payne, Byers, Reed, Straughn, Taylor, Johnson, and Richardson.

As an initial matter, the parties *agree* that Covert did not exhaust his "failure to investigate/deliberate indifference claim" against Kelley, Payne, Byers, Reed, Straughn, Taylor, Johnson, and Richardson. *Doc. 57 at 10, ¶ 28; Doc. 63 at 3, ¶ 28.*

In VSM19-01237, Covert alleges that Defendants Kelley, Payne, Byers, and Straughn "fail[ed] to protect a substantial risk of serious harm and…disregarded that risk by failing to take reasonable measure[s] to abate the deadly issue." However, Covert does *not* argue that he properly exhausted that grievance by appealing the Step Two denial of VSM19-01237 to Step Three.

---

[12] He also argues that he exhausted his First Amendment retaliation claims against Plummer, Lloyd, Swopes, and Hampton in VSM19-02971 (*Doc. 62 at 9*)—something that the Defendants do not dispute and that they do not raise in the Motion for Partial Summary Judgment.

[13] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson,* 477 U.S. at 249–50. The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).

Because the record establishes that Covert did *not* fully exhaust his "failure to investigate/deliberate indifference claim" against Kelley, Payne, Byers, Reed, Straughn, Taylor, Johnson, and Richardson, those claims should be dismissed, without prejudice. Because Covert does not bring any additional claims against those eight Defendants, each of them should be terminated as parties to his action.

**B.    The ADC Grievance Procedure Was Available to Covert When He Attempted to Exhaust His Deliberate Indifference Claims Against Shipman, Carroll, Plummer, Naylor, and Gibson.**

Covert has also asserted a "failure to investigate/deliverable indifference" claim against Defendants Shipman, Carroll, Plummer, Naylor, and Gibson. While Covert has named all five of those Defendants in various grievances he filed in October of 2019, Defendants argue that he did not *properly* exhaust any of those because his grievances were rejected based on his failure to comply with ADC grievance procedures. Covert, on the other hand, contends that several of his October 2019 grievances were erroneously rejected and that he "did all that he could to get prison officials to process" his grievances. In other words, Covert alleges that the grievance procedure was made unavailable to him.[14]

---

[14] In *Ross v. Blake*, 578 U.S. 632 (2016), the Court described three ways in which an administrative remedy can be made "unavailable" to an inmate:

> First,…an administrative procedure is unavailable when…it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.
>
> *****

1.    **VSM19-02762 and VSM19-02766 Were Appropriately Rejected As a Duplicates of VSM19-02628**

Covert alleges that he tried to exhaust his "failure to investigate/deliberate indifference" claims against Shipman, Carroll, Naylor and Gibson in VSM19-02762 and VSM19-02766, but those grievances were erroneously rejected as duplicates of VSM19-02628.

In October 2019, Covert submitted three grievances related to "Sgt. Jones" allegedly bringing drugs into VSM. He submitted the first informal resolution, which later became VSM19-02628 on October 1. In that grievance, he alleged Sgt. Jones was bringing K-2 and "skate" to an inmate held in cell 547. He did *not* name *any* of the Defendants in that informal resolution. An investigation was conducted into his allegations, and, on October 14, the Step Two decision maker found all of his allegations against Sgt. Jones to be "unfounded" and denied VSM19-02628.

It is unclear from the record if Covert filed the required Step Three appeal because the section of the grievance appeal form is blank. However, the record is

---

Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use…When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available."

*****

And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation…And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures.

*Id.* at 643–44 (internal citations omitted).

clear that, on October 16, two days after the Step Two decision maker used the results of the investigation into allegations against Sgt. Jones to find these allegations "unfounded," Covert filed *two* new informal grievances collaterally attacking the investigation into his allegations about Sgt. Jones bringing drugs into the VSM Unit. Those two informal grievances would later become VSM19-02762 and VSM19-02766.

In VSM19-02762, initiated on October 16, Covert alleged that Defendants Gibson, Shipman, and Carroll failed to investigate the allegations against Sgt. Jones. Although Covert also named Plummer in VSM19-02762, he does not allege that Plummer committed any wrongdoing. In apparent acknowledgement of having not made any claims against Plummer, Covert only argues that "VSM19-02762 was fully exhausted against Defendants Gibson, Shipman, and Carroll." *Doc. 63 at 4, ¶ 48*.

In VSM19-02766, which was also initiated on October 16, Covert did *not* allege having a "problem" or "complaint"—something that is explicitly required by AD 19-20. *See* AD 19-20 § II ("The grievance procedure is an administrative process for the submission and resolution of inmate problems and complaints."). Instead, in VSM19-02766, Covert merely asks that Defendant Carroll preserve the video footage which he believed would show Sgt. Jones delivering drugs to a prisoner in cell 547 on October 1, 2019.

22

VSM19-02762 was nothing more than a collateral attack on the investigation that the Step Two decision maker relied on to deny the claim Covert asserted against Sgt. Jones in VSM19-02628. The appropriate procedural vehicle for Covert to raise his entirely speculative concerns about the investigation into Sgt. Jones' alleged drug dealing was in his Step Three appeal of VSM19-02628, not by filing a new informal resolution. See AD 19-20 § IV(G)(2) (Stating that inmates may appeal if they believe their Step Two formal grievance was "improperly rejected" and they "must state a reason for the[ir] appeal" in the space provided.).

Likewise, VSM19-02766 seeks only to have Defendant Carroll preserve any video of what Covert believes was a drug transaction between Sgt. Jones and a prisoner in cell 547 on October 1, 2019. Because that grievance does not state a "problem" or "complaint," and merely requests Defendant Carroll to preserve any video of the October 1 incident that might still be available, it violated AD 19-20 § II and was properly rejected on procedural grounds.

Accordingly, Covert cannot rely on VSM19-02762 and VSM19-02766 to establish that he properly exhausted his "failure to investigate/deliberate indifference" claims against Gibson, Shipman, Carroll, or Plummer.

### 2.    VSM19-02767 Was Appropriately Rejected As Frivolous

In VSM19-02767, Covert alleges that the ADC policy regarding the way employees were allowed to wear their hair enabled employees to smuggle drugs into

VSM. He further alleges Defendants Shipman, Naylor, and Carroll were aware VSM employees used their hair to hide drugs and smuggle them inside to prisoners, but did nothing to change the policy.

Both the Step Two and Step Three decision makers rejected this grievance as "frivolous and vexatious" with no written explanation. This seems to suggest both those decision makers believed the grievance was so patently frivolous and vexatious that no explanation was necessary. *Doc. 55-10 at 2, 5–6*.[15]

Under the ADC's grievance procedures, "[a] submission is frivolous when it is clearly insufficient on its face to allege an issue or concern and is readily recognizable as devoid of merit and insufficient for resolution or appeal" and "[a] submission is vexatious when it merely agitates, provokes, harasses or irritates by petty provocation and is not designed to lead to any practical result, resolution, or appeal." AD 19-20 § IV(J)(2)(b)–(c).

In his informal resolution that later became VSM19-02767, Covert states the following:

> I am currently an inmate that is confined to a condition of confinement that is unconstitutional. Deputy Warden J Shipman along with chief of Security B Carroll and R Naylor are all aware that they have a policy

---

[15] In her affidavit, Grigsby-Brown states that "The Unit Level Grievance Officer rejected VSM19-02767 as frivolous and vexatious because it was essentially the same complaint raised three times before in VSM19-02628, VSM19-02762, and VSM19-02766—that employees were smuggling drugs into the prison." *Doc. 55-4 at 11, ¶ 57*. Considering the grievance itself contains no written explanation, it is unclear how *Grigsby-Brown* has personal knowledge of the *specific reason* the Unit Level Grievance Coordinator, *Gloria Shipman*, rejected the grievance. *See Doc. 55-10 at 5*.

in place that is and will only continue to violate my Eight Amendment under personal safety due to the policy that deals with how employees wear their hair. [This] will continue to be how employees smuggle drugs into this secure environment. Back in May of 2019, Chief of Security B Carroll conducted an investigation where I was pulled to his office and Major Carroll told me that this policy has been changed. Major Carroll does know about this issue and has and will only continue to fail to protect me from a substantial risk of serious harm and has disregard that risk by failing to take reasonable measure to abate this issue. All defendants are responsible for the operation and the welfare of this unit. They should provide a safe, secure, and humane environment for inmates. But it is not safe or secure. Who can say that poison that kills will not be smuggled into this unit? Everything else is being smuggle into this unit. The way the policy that deals with employees' hair has to change. Chief of Security B Carroll has lied to me once about this issue.

*Doc. 55-10 at 6* (minor punctuation and spelling corrections made throughout).

Covert's grievance contains entirely fanciful allegations describing a VSM policy that is designed to allow guards and other employees to hide drugs in their hair and then smuggle those drugs to prisoners. He gives no factual support for these entirely speculative and far-fetched allegations, and seems to be raising them to harass, irritate, and insult those who are required to review and decide those grievances. On its face, VSM19-02767 contains allegations that are patently frivolous and vexatious. Thus, the Step Two and Step Three decision maker properly rejected that grievance on those procedural grounds.

Accordingly, Covert cannot rely on VSM19-0267 to establish that he properly exhausted his administrative remedies on any of the claims he has asserted against Shipman, Naylor, and Carroll.

### C.    Covert's First Amendment Retaliation Claims Move Forward

In Defendants' Motion for Partial Summary Judgment, Defendants Plummer, Lloyd, Swopes, and Hampton have *not* argued that Covert failed to fully and properly exhaust the First Amendment retaliation claim he has asserted against them. Accordingly, Covert should be allowed to proceed only with that claims against Defendants Plummer, Lloyd, Swopes, and Hampton.

### V.    Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    The ADC Defendants' Motion for Partial Summary Judgment (*Doc. 55*) be GRANTED based on Covert's failure to exhaust his deliberate indifference claims.

2.    Because Covert brings *only* deliberate indifference claims against Defendants Kelley, Payne, Shipman, Byers, Carroll, Reed, Straughn, Taylor, Johnson, Richardson, Naylor, and Gibson, those Defendants be TERMINATED as parties to this action.

3.    Covert's First Amendment retaliation claim against Defendants Plummer, Lloyd, Swopes, and Hampton, which arises from an alleged retaliatory cell search on October 27, 2019, be allowed to proceed.

DATED this 15th day of August, 2022.

_____
UNITED STATES MAGISTRATE JUDGE