# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | |
|---|---|
| HAROLD MOSES COVERT<br>ADC #151511 | PLAINTIFF |
| V. | No. 4:20-CV-202-BSM-JTR |
| JAMES PLUMMER, Captain,<br>MARY LLOYD, Lieutenant,<br>LAQUISTA SWOPES, Sergeant,<br>and HAMPTON, Sergeant | DEFENDANTS |

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of the Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction

Plaintiff Harold Moses Covert ("Covert"), a prisoner in the Varner Supermax Unit of the Arkansas Division of Correction ("ADC"), filed this *pro se* § 1983 action alleging that his constitutional rights were violated. *Doc. 2*. After screening the

Complaint, the Court permitted Covert to proceed with: (1) his Eighth Amendment claim that Defendants were deliberately indifference to a substantial risk of harm to his safety and; (2) his First Amendment claim that Defendants Captain James Plummer ("Plummer"), Lieutenant Mary Lloyd ("Lloyd"), Sergeant Laquita Swopes ("Swopes"), and Sergeant Hampton ("Hampton") subjected him to a retaliatory cell search, on October 27, 2019, after he reported to the "Arkansas State Crime information line" that drugs were being smuggled into Varner Supermax. *Doc. 20*.

On September 19, 2022, Judge Miller entered an Order granting Defendants' Motion for Partial Summary Judgment on Covert's deliberate indifference claims because he failed to fully and properly exhaust his administrative remedies on those claims before he initiated this action. *Doc. 74*. Thus, Covert's only remaining claim is his First Amendment retaliation claim against Plummer, Lloyd, Swopes, and Hampton.

On January 3, 2023, Defendants Plummer, Lloyd, and Swopes[1] filed a Motion for Summary Judgment, Brief in Support, and a Statement of Undisputed Facts. *Docs. 88–90*. On January 11, 2023, Covert filed a Response, Brief in Support of Response, and Statement of Disputed Facts. *Docs. 92–94*. Thus, the legal issues raised in the Motion for Summary Judgment are joined and ready for disposition.[2]

---

[1] Defendant Hampton has never been served in this matter. *See Doc. 22; Doc. 51*.

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the

2

## II. Relevant Facts

In support of their Motion for Summary Judgment, Defendants submit their verified discovery responses to Covert's First Set of Interrogatories and Request for Production of Documents (*Doc. 88-1*) and a letter from Arkansas State Police counsel indicating that she had contacted several State agencies but not one of them had any records to support Covert's claim that, on October 27, 2019, he placed a phone call from Varner Supermax reporting that prisoners in his cell block were selling drugs (*Doc. 88-2*).

In support of his Response, Covert submits the following *relevant* documents: (1) his own sworn Declaration (*Doc. 95*); (2) a grievance he filed immediately after the allegedly retaliatory cell search on October 27, 2019 (*Doc. 92 at 7–12*);[3] (3) Swopes and Lloyd's Answers to his Requests for Admission (*Doc. 92 at 21–29*);[4] and ADC Administrative Directive 18-15, "Searches of Inmates, Unit Searches and Control of Contraband" ("AD 18-15") (*Doc. 92 at 31–35*).

---

moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011).

[3] In an attached Affidavit, Covert declares under penalty of perjury that the facts contained in that grievance are "true to the best of [his] knowledge." *Doc. 92 at 12*.

[4] These Answers to Covert's Requests for Admission are signed by Defendants' counsel in accordance with Rule 36(a)(2) of the Federal Rules of Civil Procedure.

The relevant undisputed facts, which the Court has gleaned from the attachments to the parties' summary judgment papers and Covert's verified Complaint (*Doc. 2*),[5] are set forth below:[6]

1. At 8:50 a.m. on October 27, 2019, Covert used the "state phone"[7] at Varner Supermax to place a call to the "Arkansas State Crime information line." Compl., *Doc. 2 at 14*; *Doc. 95 at 1*.

2. In this phone call, he "reported" that prisoners in his cellblock, "Cellblock 5," were selling drugs. *Doc. 2 at 14, 31*; *Doc. 95 at 1*. It is unclear whether Covert spoke with a person or simply left a message relaying that information.[8]

---

[5] Because Covert's Complaint is signed under penalty of perjury, it is "the equivalent of an affidavit for purposes of summary judgment." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001).

[6] Defendants argue that the Court should consider the statements in their Answer to Covert's Complaint as support for their Statement of Undisputed Material Facts. *Doc. 90 at 1, ¶ 4*. The Court is not permitted to consider a party's *unverified* Answer as a source for *facts* which can be considered to be true in deciding a motion for summary judgment. The Court also will not consider the letters and Affidavit about the events that took place in January 2023 (*Doc. 92 at 13–14*) or the discovery correspondence between Covert and Defendants' counsel (*Doc. 92 at 15–19*). None of those documents are in any way relevant to whether Covert's constitutional rights were violated in the cell search that took place on October 27, 2019.

[7] "[I]nmates housed in Varner Supermax are permitted to use a state phone that is brought to an inmate's cell on a rolling cart; the inmates use the phone through the cell traps." *Shirhashirim v. Gibson*, No. 5:19-CV-11-DPM-JJV, 2021 WL 4530042, at *2 (E.D. Ark. Sept. 14, 2021).

[8] It is also unclear which State "information line" Covert allegedly called. According to the Arkansas Crime Information Center's website, it "is the state agency responsible for providing information technology services to law enforcement and other criminal justice agencies in Arkansas." *Arkansas Crime Information Center*, ARK. DEP'T OF PUB. SAFETY, https://www.dps.arkansas.gov/crime-info-support/arkansas-crime-information-center/about-us/ (last visited January 24, 2023). Based on this description, it is unlikely that this is the agency Covert intended to call.

3.  Thirty-five minutes after Covert made this phone call, Sergeants Swopes and Hampton handcuffed and removed Covert from his one-man cell in Cellblock 5 of Varner Supermax. *Doc. 2 at 14, 31; Doc. 95 at 1*. Swopes conducted a cell search while Hampton stood outside with Covert. *Doc. 2 at 14, 32; Doc. 95 at 1*.

4.  Hampton asked Covert: "Who have you wrote a grievance on [?]" *Doc. 2 at 14*.

5.  After the search did not reveal any drugs or other contraband, Swopes and Hampton escorted Covert to the control booth where Captain Plummer and Lieutenant Lloyd were stationed. *Doc. 2 at 15; Doc. 95 at 1*.

6.  According to Covert, Lloyd asked Swopes and Hampton, "What y'all doing [?] I told y'all to just take the state phone from him." *Doc. 2 at 15; Doc. 95 at 1*.

7.  Covert was then escorted back to his cell. *Doc. 2 at 15*.

8.  Swopes and Hampton did not search any other cells in Cellblock 5. *Doc. 2 at 15, 31; Doc. 95 at 1*

9.  Covert immediately grieved the cell search by filing an Informal Resolution. *Doc. 2 at 31*. At Step Two of the ADC's grievance procedure, the Warden denied his grievance because Covert had "not provided any evidence to support [his] allegation of retaliation," and the search was authorized by and

conducted in conformance with AD 18-5. *Doc. 2 at 32*. The Warden's decision was affirmed at Step 3. *Id. at 34*.

10. AD 18-15 provides that searches of inmates may include "persons, clothing, and other personal items" and that "[s]earches of inmates are conducted as often as necessary to control contraband, but never for purposes of punishment or harassment." *Doc. 92 at 33*.

11. The Arkansas Crime Information Center does not record phone calls. Accordingly, it does not have a recording of the phone call Covert states he made on October 27, 2019. *Doc. 88-2*.

12. The Arkansas State Police Criminal Investigation Division "does not have a file for [Covert], which would house any recordings received or made part of an investigation file." *Id.*

13. The Arkansas State Police Fusion Center "do[es] not have any recordings under [Covert's] name," dated October 27, 2019, in their records.

14. The ADC's eOMIS system[9] does not have any information regarding a phone call Covert made on October 27, 2019 to the Arkansas Crime Information Center, or any other state agency. *Doc. 88-1 at 2–3*.

---

[9] "eOMIS is an acronym for the Electronic Offender Management Information System, a corrections software system used by the ADC." *Dykes v. Corizon LLC*, No. 2:14-CV-107-BSM-PSH, 2016 WL 3039634, at *3 (E.D. Ark. Apr. 15, 2016).

## III. Discussion

**A. Plummer, Lloyd, and Swopes Are Entitled to Qualified Immunity**

In support of their summary judgment papers, Defendants primarily argue they are each entitled to qualified immunity because Covert has not demonstrated a violation of his First Amendment Rights.

Whether Defendants are entitled to qualified immunity is a two-prong inquiry, that requires the Court to determine if Covert has demonstrated: "(1) a deprivation of a constitutional right, and (2) that the right was clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). While a district court may address the prongs in any order, it may not deny qualified immunity without answering both questions in the plaintiff's favor." *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (citation and internal quotations marks omitted).

**1. Covert Has Not Demonstrated A Constitutional Violation**

To support his retaliation claim, Covert must show that: (1) he engaged in constitutionally protected activity; (2) Defendants took adverse action against him that would chill a prisoner of ordinary firmness from engaging in that activity; and (3) a causal connection exists between the Defendants' retaliatory motive and the adverse action. *De Rossitte v. Correct Care Sols., LLC.,* 22 F.4th 796, 804 (8th Cir. 2022); *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

The Court assumes, without deciding, that Covert engaged in First-Amendment-protected activity when he called a State information line to report prisoners selling drugs in his cellblock in Varner Supermax.[10] Even so, Defendants are entitled to qualified immunity because Covert cannot demonstrate that (1) the subsequent search of his cell would have chilled a prisoner of ordinary firmness from reporting the sale of drugs; and (2) the search of his cell would not have taken place but for Defendants' allegedly retaliatory motive.

"[R]outine shakedowns of prison cells are essential to the effective administration of prisons," and prisoners do not have a right to privacy in their prison cells. *Hudson v. Palmer*, 468 U.S. 517, 529 (1984). To effectuate a "safe, secure environment for inmates," the ADC conducts cell searches "as often as necessary to control contraband." AD 18-15 §§ II, IV(B), *Doc. 92 at 31, 33*. Especially, for prisoners like Covert, who are housed in the Varner Supermax Unit, cell searches are a routine part of their incarceration that can happen at any time.

---

[10] *See Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (free-world plaintiff's public criticism of county's lax enforcement of regulations was clearly "First Amendment-protected activity"); *Sisk v. Briggs*, No. 4:20-CV-1121-DPM-JTR, 2022 WL 885891, at *3 (E.D. Ark. Feb. 25, 2022) (finding pretrial detainee "engaged in First Amendment-protected activity when he complained about the conditions inside [the county jail] during [a] telephone call"), *report and recommendation adopted*, 2022 WL 883429 (E.D. Ark. Mar. 24, 2022); *but see Beaulieu v. Ludeman*, 690 F.3d 1017, 1037–41 (8th Cir. 2012) (noting that prisoners' First Amendment right to access the courts does not provide them unbridled access to telephone calls).

Covert does not allege and the record does not establish that the cell search conducted by Swopes on the morning of October 27, 2019 was unreasonably invasive, abusive, or had any other aggravating factors.[11] In other words, nothing about the routine search of Covert's cell rose to a level that would have dissuaded a prisoner of ordinary firmness from exercising his First Amendment rights.

Furthermore, there is *no direct evidence* that Defendants searched Covert's cell in retaliation for his phone call to the Arkansas State Crime information line *thirty-five minutes earlier*.[12] Instead, Covert has only speculation, conjecture, and coincidence to support his retaliation claim. "To avoid summary judgment, [Covert] must submit "affirmative evidence [of] a retaliatory motive." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). "[M]ere allegations of retaliatory motive are insufficient." *De Rossitte*, 22 F.4th 796, 804 (8th Cir. 2022).

---

[11] The United States Supreme Court and the Eighth Circuit have only found cell searches that have involved abusive or aggravating factors to state a claim for Eighth Amendment and due process violations. For example, cell searches that have involved intentional destruction of property (*Hudson*, 468 U.S. 517); ten searches over nineteen days that "left the cell in disarray" (*Scher v. Engelke*, 943 F.2d 921, 923 (8th Cir. 1991)); and legal papers being searched outside the prisoner's presence and scattered throughout the cell (*Welch v. Spangler*, 939 F.2d 570 (8th Cir. 1991)). Although Covert does *not* need to show that the October 27, 2019 cell search itself violated his constitutional rights, *Santiago v. Blair*, 707 F.3d 984, 994 (8th Cir. 2013), he is required to demonstrate an abusive or aggravating aspect of the cell search which objectively would have a chilling effect on a prisoner's exercise of his First Amendment rights.

[12] For the search to have been triggered within thirty-five minutes of Covert making the phone call a telephone monitor at Varner Supermax would have had to listen to the call and either immediately ordered staff to search Covert's cell or immediately reported the information to Captain Plummer or Lieutenant Lloyd. Covert has alleged no facts or made any allegations that this unidentified and unknown telephone monitor had any motive to retaliate against him.

9

Covert has not submitted any evidence to show that any of the Defendants who conducted the search had any knowledge of *the content* of his phone call *thirty-five minutes* earlier.[13] *Doc. 2 at 14*. Covert points to Lieutenant Lloyd's statement that Sergeants Swopes and Hampton were only supposed to "take the state phone from him," as apparent evidence of a retaliatory motive by Swopes and Hampton. *Doc. 2 at 15*; *Doc. 95 at 1*. At most, this suggest a good faith miscommunication between Lloyd, who told Swopes and Hampton to take the portable state phone Covert had been using and return it to the duty station, and Swopes and Hampton construing Lloyd's statement to mean they were also supposed to take the phone *and* conduct a search of his cell. Nothing about this misunderstanding suggests *any retaliatory motive.*

Finally, even accepting Covert's version of the facts as true, he still has failed to establish the third element of his First Amendment retaliation claim. In order to establish a causal connection between his protected speech and the cell search, "[Covert] must show that the protected activity was a 'but-for cause' of the adverse action, meaning that the adverse action against [him] would not have been taken absent a retaliatory motive." *De Rossitte*, 22 F.4th at 804 (citation and quotation

---

[13] In response to Covert's Requests for Admission, Lloyd states that she does "not recall having received a phone call regarding information made by the Plaintiff from the Arkansas State Crime Information [C]enter," on October 27, 2019. *Doc. 92 at 26*. In short, there is *nothing* in the record to support Covert's speculation that his phone call reporting the sale of drugs triggered the search of his cell.

omitted). "Though this is generally a jury question, it may provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." *Id.* (citation and quotation omitted).

Here, Covert reported in his phone call that drugs were being sold in Cellblock 5. Assuming the almost immediate search of his cell was triggered by his phone call, Defendants began the cell search at the *logical starting point*—the cell of the prisoner who reported there were drugs being sold in Cellblock 5.[14] *See* AD 18-15 § IV(B) (cell searches are to be conducted "as often as necessary to control contraband"), *Doc. 92 at 33*; *see also Hudson*, 468 U.S. at 526–27 ("[P]rison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors…[and] the inmates themselves."). Thus, Covert cannot show that the cell search would not have been conducted absent a retaliatory motive.

Because Covert has not shown the October 27, 2019 cell search was sufficient to create an objective "chilling effect" or that retaliatory animus was the but-for cause of the cell search, he has not met his burden to show he was deprived of a

---

[14] That is not to say Defendants *needed* a "good reason" to search Covert's cell. The Court has explicitly rejected the notion that prison officials must have reasonable suspicion to conduct cell searches or that "random searches [must] be conducted pursuant to an established plan." *Hudson*, 468 U.S. at 526–27. Instead, the Court has noted that it is imperative that prison officials have *unfettered* access to search prison cells in order to ferret out drugs and contraband and maintain sanitary surroundings. *Id.* at 527.

11

constitutional right. Accordingly, Defendants are entitled to qualified immunity under the first prong of the qualified immunity analysis.

### 2. The Alleged Constitutional Right Was Not Clearly Established

Alternatively, Defendants are entitled to qualified immunity because Covert has failed to demonstrate the existence of a clearly established right.

Neither party has submitted any argument or case law on the second prong of the qualified immunity analysis. Nevertheless, the Court is free to decide if, under relevant precedents, "a right was clearly established at the time the conduct occurred." *Wright v. United States*, 813 F.3d 689, 696 (8th Cir. 2015) (noting Defendants did not expressly waive the "clearly established" argument by failing to argue it before the district court or on appeal and ultimately finding Defendants were entitled to qualified immunity because the right at issue was not clearly established).

The Eighth Circuit has described the "clearly established" prong of qualified immunity as follows:

> Qualified immunity shields a government official from suit under § 1983 if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. A plaintiff must identify either "controlling authority" or "a robust consensus of cases of persuasive authority" that placed the statutory or constitutional question beyond debate at the time of the alleged violation. In other words, the law at the time of the events in question must have given the officers "fair warning" that their conduct was unconstitutional.

*Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (cleaned up) (citations omitted).

*As a generally proposition*, Covert's right to be free from retaliation was clearly established at the time of the incident on October 27, 2019. *See e.g.*, *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999). However, "[t]he Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality." *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*), *cert. denied*, 141 S. Ct. 1071 (2021) (citation and internal ellipsis omitted); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). Instead, "[a] more specific and particularized inquiry is necessary in order to assess clearly established law in the context of an assertion of qualified immunity." *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020). In other words, the narrow issue to be decided is: "whether the violative nature of <u>particular</u> conduct is clearly established ... in light of the specific context of the case." *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (emphasis in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

In this case, the "particular conduct" is a cell search conducted in response to Covert's report of drugs being sold in his cellblock. The Court has located no Eighth Circuit or Supreme Court cases suggesting that: (1) a prisoner's phone call to a state

13

agency is speech protected by the First Amendment; or (2) a cell search is an adverse action that may constitute retaliatory conduct.[15]

Without controlling authority, or even a "robust consensus of persuasive authority," no reasonable official in Defendants' position would be on notice that the October 27, 2019 cell search would violate Covert's First Amendment rights. Accordingly, because the constitutional right alleged by Covert was not clearly established in October of 2019, Defendants Plummer, Lloyd, and Swopes are also entitled to qualified immunity under the second prong of the qualified immunity analysis.

### B. Official Capacity Claims Against Plummer, Lloyd, and Swopes

In his Complaint, Covert purports to sue all Defendants in their individual *and* official capacities. *Doc. 2 at 4*. However, Covert has neither alleged nor produced any evidence suggesting that Defendants were acting pursuant to a government policy or custom when they searched his cell.[16] Accordingly, Plummer, Lloyd and

---

[15] Conversely, it *is* clearly established that the filing of prison grievances and inmate lawsuits are protected First Amendment activity. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). It is also clearly established that prison transfers, disciplinaries, death threats, threats of retaliation, worsening of prisoner's working or living conditions, and denial of privileges may constitute adverse actions. *Id.* (worsening of working conditions); *Burton v. Livingston,* 791 F.2d 97, 100 (8th Cir. 1986) (death threats); *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911–12 (8th Cir. 2013) (transfer and denial of privileges); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (disciplinaries); *Santiago v. Blair*, 707 F.3d 984, 994 (8th Cir. 2013) (living conditions); *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994) (threats of retaliation).

[16] In fact, Covert claims that Defendants failed to comply with the ADC policy on cell searches, making it clear that he is suing them in their *individual capacity*. Doc. 94 at 3–4.

Swopes are entitled to summary judgment on Covert's claims he is bringing against them in their official capacities. *See Remington v. Hoopes*, 611 F. App'x 883, 886 (8th Cir. 2015) (finding defendants were entitled to summary judgment on an official-capacity claim where plaintiffs "failed to allege facts—or produce evidence—showing that the defendants acted pursuant to a government policy or custom").

### C. Claims against Hampton

On December 28, 2020, the Court ordered the Clerk to issue a summons for Defendant "Sergeant Hampton." *Doc. 20*. That Order also stated that "if any Defendant is no longer an ADC employee, the individual responding to service must file a sealed statement providing the unserved Defendant's last known private mailing address." *Id. at 4, n.*3. This summons was later returned unexecuted and a sealed address was provided. *Doc. 22*. The Court reissued summons to Sergeant Hampton at his last-known address. *Doc. 44*. That summons was also returned unexecuted. *Doc. 48; Doc. 51*.

On October 19, 2021, the Court entered an Order giving Covert thirty days to file a Motion for Service that provided a valid service address for Hampton. *Doc. 54*. The Order specifically explained to Covert that, if he did not timely and properly provide the Court with sufficient information to identify and serve Hampton, his claims against Hampton could be dismissed, without prejudice. *Id.* (citing Fed. R.

15

Civ. P. 4(m)). Covert responded to the Court's Order stating that he was unable to find a valid service address for Hampton. *Doc. 59*. Covert concedes that Hampton has never been served and that dismissal is appropriate. *Doc. 92 at 1, ¶ 5*.

Accordingly, Covert's claims against Hampton should be dismissed, without prejudice, due to lack of service. *See* Fed. R. Civ. P. 4(m); *Carmona v. Ross*, 376 F.3d 829 (8th Cir. 2004) (affirming dismissal of unserved defendants in civil rights action where District Court gave plaintiff extension to complete service and warned him that his failure to do so would result in dismissal).

### IV. Conclusion

Defendants Plummer, Lloyd, and Swopes are entitled to qualified immunity, in their individual capacities, because Covert failed to demonstrate a violation of his First Amendment rights and he had no clearly established constitutional right. Defendants Plummer, Lloyd, and Swopes are further entitled to summary judgment in their official capacities because there is no allegation or evidence that they were acting pursuant to an official policy or custom.

Finally, Covert's claims against Hampton should be dismissed due to lack of service.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants Plummer, Lloyd, and Swopes' Motion for Summary Judgment (*Doc. 88*) be GRANTED.

2. All of Covert's claims against Plummer, Lloyd, and Swopes be DISMISSED, with prejudice.

3. All of Covert's claims against Hampton be DISMISSED, without prejudice.

4. Judgment be entered, accordingly,[17] and this case, in its entirety, be TERMINATED.

DATED this 27th day of January, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[17] All claims against all other Defendants were previously dismissed without prejudice. *Doc. 74*.

17